# Deutsche Bank Trust Co. Ams. v DeKalb Marcy Estates, LLC

## 2026 NY Slip Op 30741(U)

### February 23, 2026

### Supreme Court, Kings County

### Docket Number: Index No. 525527/24

### Judge: Genine D. Edwards

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At Part Comm-6 of the Supreme Court of
the State of New York, held in and for the
County of Kings, at the Courthouse, at 360
Adams Street, Brooklyn, New York, on the
23rd day of February 2026.

P R E S E N T:

HON. GENINE D. EDWARDS,

                                Justice.

------------------------------------------------------------------------X

DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS TRUSTEE FOR THE REGISTERED HOLDERS
OF BANC OF AMERICA MERRILL LYNCH
COMMERCIAL MORTGAGE INC., MULTIFAMILY
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2015-SB9,

                                  Plaintiff,

            -against-                                 Index No. 525527/24

DEKALB MARCY ESTATES, LLC, YESHAYA
WASSERMAN, Z&A SERVICES INC., d/b/a UPPER
CLASS FLOORING, KARL C. CLARKE, and NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD,

                                  Defendants.

------------------------------------------------------------------------X

| The following e-filed papers read herein: | NYSCEF Nos.: |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed | 109-110 |
| Opposing Affidavits (Affirmations) | 122 |
| Affidavits/ Affirmations in Reply | 130 |

Upon the foregoing papers, plaintiff Deutsche Bank Trust Company Americas, as

Trustee for the Registered Holders of Banc of America Merrill Lynch Commercial

Mortgage Inc., Multifamily Mortgage Pass-Through Certificates, Series 2015-SB9

(plaintiff) moves for an order (1) confirming the referee's report on the amount due under

[* 1]

the subject note and mortgage, dated September 4, 2025, and (2) entering a judgment of foreclosure and sale.

On September 20, 2024, plaintiff commenced this action to foreclose a consolidated commercial mortgage encumbering the property at 709-711 DeKalb Avenue in Brooklyn. By order dated January 14, 2025, plaintiff was granted summary judgment against defendant mortgagor DeKalb Marcy Estates, LLC (DeKalb) and defendant guarantor Yeshaya Wasserman (Wasserman) on all claims asserted in the verified complaint and a referee was appointed to compute. On September 4, 2025, the referee rendered his report, wherein he found the amount of $12,880,584.23 due and owing as of August 31, 2025. The sum included interest in the amount of $971,993.91, at rates of 6.13% from October 1, 2023 through October 31, 2023, 7.13% from November 1, 2023 through April 30, 2024, 8.13% from May 1, 2024 through April 30, 2025, and 7.51191% with a per diem of $1,640.2569 through May 1, 2025. Also included in the total was default interest of $2,903.877.12, from June 14, 2017 through May 1, 2025 at a rate of 4.00% with a per diem of $873.4167; a 1% prepayment premium in the amount of $78,607.50; a liquidation fee of $117,911.25; and late charges of $102,707.43 for the period July 31, 2020 through September 20, 2024.

The foregoing calculations, in addition to the other calculations and totals set forth in the referee's report, were presented by plaintiff in its affirmation of debt submitted to the referee (NYSCEF Doc No 112). Defendants responded to the affirmation of debt through submission to the referee of an "affirmation in opposition to plaintiff's proposed calculation" (NYSCEF Doc No 115). In this opposing affirmation, defendants argued:

2

"a. As set forth in Plaintiff's Complaint, Defendant DeKalb Marcy's monetary defaults that resulted in this foreclosure action did not start until November 2023, Defendant having made the required monthly mortgage payments through October 2023. Nevertheless, Plaintiff's Proposed Computation includes default interest commencing June 14, 2017, more than six years prior to DeKalb Marcy's November 2023 monetary default. Accordingly, Plaintiff should not be entitled to default interest prior to November 2023.

"b. In its Proposed Computation, Plaintiff not only seeks default interest, but also 'Late Charges' in excess of $100,000.00 as well. Default interest and late fees are alternative ways to compensate a lender when its borrower defaults. Awarding both to the lender constitutes an improper double recovery. Accordingly, as Plaintiff is already seeking to collect default interest, it should not be allowed to also charge late fees.

"c. Plaintiff improperly includes in its Proposed Computation '1% Prepayment Premium' in the amount of $78,607.50. However, given Plaintiff's acceleration of the mortgage indebtedness, the applicable case law set forth below precludes Plaintiff's ability to collect such a prepayment penalty.

"d. Lastly, Plaintiff included in its proposed computation a 'Liquidation Fee' of $117,911.25. As will be discussed below, courts have found the amount of such a fee should be based upon the actual damages, if any, incurred by the lender in the enforcement of its loan. Plaintiff has failed to demonstrate why the Special Servicing Fees in the amount of $77,043.60, which Plaintiff seeks to be included in the Proposed Computation, does not suffice to cover the entirety of Plaintiff's costs in enforcing the loan. Therefore, Plaintiff should not be entitled to include a $117,911.25 Liquidation Fee in the Proposed Computation on top of the $77,043.60 in Special Servicing Fees."

3

[* 3]

Plaintiff submitted a reply affirmation to the referee in support of its calculation, wherein it argued, in sum and substance, that the disputed charges were allowable under the terms of the relevant loan documents executed by defendants and are legally permissible.

Plaintiff now moves to confirm the referee's report and for entry of a judgment of foreclosure based on the amounts set forth by the referee. Defendants oppose the motion, raising the same objections it presented to the referee in their affirmation in opposition to plaintiff's proposed calculation. Defendants alternatively argue that should the court find plaintiff is entitled to an award of late fees, such should be limited to the period November 1, 2023, the date of DeKalb's first missed payment, through September 20, 2024, the date of the filing of the complaint, and should not be calculated based upon a starting date of July 31, 2020, as plaintiff seeks. Additionally, defendants argue that the referee's report should be rejected on the ground that he did not hold a hearing before rendering his report.

"The report of a referee should be confirmed whenever the findings are substantially supported by the record, and the referee has clearly defined the issues and resolved matters of credibility." *U.S. Bank N.A. v. Moschetta*, 216 A.D.3d 848, 187 N.Y.S.3d 340 (2d Dept. 2023) (internal quotation marks omitted); *U.S. Bank N.A. v. Sheth*, 177 A.D.3d 1018, 113 N.Y.S.3d 166 (2d Dept 2019) (internal quotation marks omitted).

As an initial matter, "[w]here, as here, a defendant ha[s] an opportunity to raise questions and submit evidence directly to the Supreme Court, which evidence could be considered by the court in determining whether to confirm the referee's report, the

4

[* 4]

defendant is not prejudiced by any error in failing to hold a hearing." *Bank of N.Y. Mellon v. Viola*, 181 A.D.3d 767, 770, 122 N.Y.S.3d 55 (2d Dept. 2020); *see U.S. Bank, N.A. v. Mays*, 221 A.D.3d 934, 199 N.Y.S.3d 681 (2d Dept. 2023).

Defendants maintain that the measurement of default interest from June 14, 2017, the date of an Environmental Control Board judgment (ECB Judgment) against the mortgaged property, resulted in an additional interest award of more than $2.9 Million, which is unconscionable given the "de minimis" $300 amount of the ECB Judgment. However, the ECB Judgment constituted a "Prohibited Transfer" and an "Event of Default" under Section 7.02 of the Loan Agreement (NYSCEF Doc No 4), and was alleged as being an event of default in the verified complaint, on which plaintiff was previously granted summary judgment. Pursuant to Section 7 (b) of the Note (NYSCEF Doc No 5), "[i]f plaintiff has not received the full amount of any monthly payment for 30 days or more after the Payment Date *or any other Event of Default has occurred and is continuing*, the interest rate will increase by an additional 4%" (emphasis added). While defendants may view the default interest award as unjust given that the ECB Judgment was for a negligible amount and payments under the loan continued to be made until 2023, plaintiff was nonetheless entitled to collect the additional default interest under the loan documents, to which defendants agreed. Even if this court were inclined to concur with defendants' view, "a court is not free to alter [a] contract to reflect its personal notions of fairness and equity." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 750 N.Y.S.2d 565 (2002). The clear terms of an agreement between sophisticated business people entered into at arm's length are entitled to deference. *See JMD Holding Corp. v.*

[* 5]

*Congress Fin. Corp.*, 4 N.Y.3d 373, 795 N.Y.S.2d 502 (2005); *Addressing Sys. & Prods., Inc. v. Friedman*, 59 A.D.3d 359, 874 N.Y.S.2d 430 (1st Dept. 2009).

Additionally, despite defendants' claim of an improper double recovery, late charges accruing prior to acceleration are allowable on top of default interest under the following terms of the Note:

**7. Borrower's Failure to Pay as Required; Defaults.**

**(a) Late Charges for Overdue Payments.** If Lender has not received the full amount of any monthly payment by the 10th of each month or any amount due under any Loan Document within 9 days (unless applicable law requires a longer period of time before a late charge maybe imposed) after it is due, Borrower must pay a late charge to Lender. The amount of the late charge will be 5% of any overdue payment or amount (unless applicable law requires a lower amount be charged). Borrower will pay this late charge promptly but only once on each late payment. If the Loan is not fully amortizing, the late charge will not be due on the final payment of Principal owed on the Maturity Date.

\* \* \*

**(d) Lender's Damages.** Borrower acknowledges that its failure to make timely payments will increase Lender's expenses and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charges required to be paid and the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate of Lender's additional expenses.

Although defendants further question the accrual period of the late charges (July 31, 2020 through September 20, 2024), which they argue was not explained in the referee's report, the referee's calculation of late charges for said accrual period was supported by plaintiff's affirmation of debt, with the accrual period also being

6

[* 6]

substantiated by the records of plaintiff's servicer (NYSCEF Doc No 46), submitted in support of the prior motion for summary judgment and appointment of a referee.

Defendants further claim that plaintiff is not entitled to a prepayment penalty because plaintiff accelerated the indebtedness by commencing the instant foreclosure action. The general rule is that a lender forfeits the right to a prepayment premium after acceleration, as the acceleration advances the maturity date and, by definition, the loan cannot then be prepaid. *See RREF III Storage LLC v. Paul*, 225 A.D.3d 576, 208 N.Y.S.3d 152 (1st Dept. 2024); *see also 3C Assoc. v. IC & LP Realty Co.*, 137 A.D.2d 439, 524 N.Y.S.2d 701 (1st Dept. 1988). In this matter, however, Section 5(d) of the Note, which must be enforced according to its terms, provides:

> **(d) Prepayment Charge**. A Prepayment charge must be paid by Borrower in connection with any Prepayment, whether voluntary or involuntary or resulting from a default by Borrower. under this Note except (i) any Prepayment occurring as a result of the application of any Insurance proceeds or Condemnation award, (ii) any Prepayment required under the terms of the Loan Agreement in connection with a Condemnation proceeding [.] or (iii) any Prepayment made during the 3 consecutive calendar month period prior to the Maturity Date (the "Window Period").

"A prepayment premium will not be enforced under default circumstances *in the absence of a clause which so states.*" *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assoc.*, 11 Misc.3d 980, 816 N.Y.S.2d 831 (Sup. Ct., Nassau County 2006) (citations omitted) (emphasis added). Here, the Note expressly allows collection of a prepayment penalty resulting from a default.

As to liquidated damages. defendants argue that:

[* 7]

> "[n]either in its submissions to the Referee nor in its papers in support of the instant motion has Plaintiff explained why the Special Servicing Fee in the amount of $77,043.60, which is included in the Referee's Report, would not be more than sufficient to encompass the actual costs incurred by Plaintiff in enforcing the mortgage loan. Accordingly, a $117,911.25 'Liquidation Fee' should not be included in the computation of the indebtedness, as said amount would be duplicative of the Special Servicing Fee, which is already included in the Referee's computation." (Affirmation in Opposition, NYSCEF Doc No 122, ¶ 20).

However, it is the party seeking to avoid the liquidated damages clause who bears the burden of proving that it is a penalty and must demonstrate either that the damages were readily ascertainable at the time the parties entered into the lending agreement or that the liquidated damages clause was "conspicuously disproportionate" to the lender's foreseeable losses. *JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 795 N.Y.S.2d 502 (2005). Defendants do not sufficiently demonstrate that plaintiff's damages were readily ascertainable at the time the loan agreement was executed or that the liquidated damages amount was conspicuously disproportionate to plaintiff's foreseeable losses. As defendants have not sustained their burden, the court cannot find the liquidation fee was improperly included in the referee's computation.

Accordingly, the court finds the referee's report is substantially based in the record and confirmation is thus warranted.

Turning to plaintiff's request for a judgment of foreclosure, the proposed judgment submitted to the court contains the following language as to a deficiency:

> ORDERED, ADJUDGED AND DECREED, that if the proceeds of such sale be insufficient to pay the amount reported due to the Plaintiff with interest and costs as

8

[* 8]

aforesaid, the Plaintiff shall recover from the defendants DEKALB MARCY ESTATES, LLC and YESHAYA WASSERMAN the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the Real Property Actions and Proceedings Law within 90 days of the delivery of the deed by the Referee, and the amount thereof is determined and awarded by an order of this Court as provided for in said section.

Defendants argue this decretal paragraph adjudges that Wasserman may be held individually liable for the entirety of a deficiency judgment, but does not take into account that Wasserman's guarantee of repayment under the Guaranty (NYSCEF Doc No 7) does not include repayment of the original principal of the loan. Specifically, section 2 (a) (i) (A) of the Guaranty states:

> "(A) Guarantor guarantees a portion of the indebtedness (including interest at the Note rate) equal to **0%** of the original Principal balance of the Note (**"Base Guaranty"**)."

However, section 2 (a) (i) (B) of the Guaranty further provides:

> "(B) In addition to the Base Guaranty, Guarantor guarantees all other amounts for which Borrower is personally liable under Article II(a), (b) and (d) of the Loan agreement."

Under Article II (d) (ii) of the Loan Agreement, DeKalb is personally liable

> "for the repayment of all of the Indebtedness upon the occurrence of any of the following Events of Default:
>
> * * *
>
> "(ii) A Transfer that is an Event of Default under Section 7.02 occurs other than a Transfer set forth in Article II(a)(vi)

9

[* 9]

above [relating to mechanic's liens and liens from 'persons' who are not affiliates of DeKalb])."

The verified complaint alleges that an Event of Default occurred under section 7.02 of the Loan Agreement (to wit, the ECB Judgment). Under the terms of the Loan Agreement, DeKalb is liable for repayment of all of the Indebtedness, which repayment was guaranteed by Wasserman under section 2 (a) (i) (B) of the Guaranty. Plaintiff was previously granted summary judgment on all claims against Wasserman, including the claim that he is liable as guarantor for repayment under "Sections 2(a)(i)(B) and 2(a)(i)(C) of the Guaranty [which] include (i) 'all other amounts for which Borrower is personally liable under Article II(a), (b) and (d) of the Loan Agreement;'"

As a result, plaintiff's motion is granted in all respects. The referee's report dated September 4, 2025 is hereby confirmed, and a signed judgment of foreclosure shall be entered at a future date.

The foregoing constitutes the decision and order of the court.

ENTER,

Genine D. Edwards
J. S. C.

[* 10]